UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
JOSE EDUARDO CURIEL,

                        Plaintiff,

              -against-

ELITE SKY INTERNATIONAL, INC.
(d/b/a ELITE SKY INTERNATIONAL),
NK SEAFOOD GROUP INC., NK
SEAFOOD, INC. (d/b/a NK SEAFOOD),
CHEN TING YEE, DOMINIC HO, and
LARRY YU

                        Defendants.
------------------------------------------------------x

REPORT &
RECOMMENDATION
10-CV-2784 (ERK)

GOLD, STEVEN M., *United States Magistrate Judge*:

## INTRODUCTION

Plaintiff Jose Eduardo Curiel ("Curiel") brings this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and under New York state law, seeking to recover unpaid minimum wages, unpaid overtime compensation, statutory damages and attorney's fees and costs in connection with defendants Elite Sky International, Inc. and Dominic Ho's labor law violations.[1] Plaintiff alleges that he was employed by Elite Sky and Ho (hereinafter "defendants") from January 2009 to March 4, 2010 and that he was not compensated as required by the FLSA and New York law during this period.[2]

---

[1] Plaintiff originally brought this action on behalf of himself and others similarly situated against Elite Sky International, Inc., NK Seafood Group, Inc., NK Seafood, Inc. and the individuals Chen Ting Yee, Dominic Ho, and Larry Yu. Plaintiff has since determined that he will not seek class certification or proceed with a collective action. *See* Affirmation of Michael A. Faillace in Response to the Court's Report and Recommendations ("Faillace Supp. Affirm.") ¶ 4, Docket Entry 31. Curiel also seeks to dismiss, without settling, his claims against Larry Yu, NK Seafood, Inc., NK Seafood Group, Inc. and Chen Ting Yee. *Id.* ¶¶ 7, 21, 23; *see also* Stipulation of Dismissal Against Defendant Larry Yu, Docket Entry 25. I recommend that the claims against these defendants be dismissed.
[2] Plaintiff's complaint included allegations of violations from before these dates. *See generally* Compl. Following plaintiff's dismissal of claims against a number of defendants, however, I asked for clarification as to whether plaintiff sought damages for the earlier period during which he was arguably employed by companies closely related

Upon plaintiff's application and in light of defendants' failure to appear in or otherwise defend this action, the Clerk of Court noted the default of the defendants. The Honorable Edward R. Korman referred this case to me to report and recommend on the amount of damages and other relief, if any, to be awarded.

## BACKGROUND

According to the complaint, Docket Entry 1, and plaintiff's supplemental submission ("Faillace Supp. Affirm."), Docket Entry 31, plaintiff began working for a seafood wholesale corporation in Brooklyn called NK Seafood, Inc. in 1998. Compl. ¶ 12; Faillace Supp. Affirm. ¶¶ 11, 13. The company moved to a new location in 2008, also in Brooklyn, where a new corporation, NK Seafood Group, Inc., was formed. Faillace Supp. Affirm. ¶¶ 11, 13. It finally moved to its current location, again in Brooklyn, in January, 2009. *Id.* ¶ 13. At this time, Elite Sky International was incorporated. *Id.* NK Seafood, Inc. was dissolved on January 26, 2011 and NK Seafood Group, Inc. on July 27, 2011. *Id.* ¶ 19. Curiel maintains that during his tenure with these companies, individual defendant Dominic Ho, along with Larry Yu, no longer a defendant, was plaintiff's supervisor and controlled his compensation. Compl. ¶¶ 19-20, 29; Faillace Supp. Affirm. ¶ 27. Plaintiff ceased working for Elite Sky International in March 2010. Compl. ¶ 33; Faillace Supp. Affirm. ¶ 13. As discussed above, plaintiff appears to seek relief only for the period from January 2009 to March 4, 2010 when he worked for Elite Sky. *See supra* n.2.

---

to Elite Sky and supervised by Dominic Ho. *See* Docket Entry 32. Plaintiff did not respond by the date specified in the Order, and I thus assume he only seeks relief for the time mentioned above.
      The Complaint and supplemental papers variously mention March 4 and March 10 as the end of plaintiff's employment with Elite Sky. *Compare, e.g.*, Compl. ¶ 33 *with* Affidavit of Jose Eduardo Curiel ("Curiel Aff.") ¶ 10, Docket Entries 22 and 31-2. I have calculated unpaid wages based on the March 4 date because there is no information, even in the papers discussing March 10 as plaintiff's termination date, about plaintiff's hours or pay after March 4. *See* Compl. ¶¶ 39, 43; Curiel Aff. ¶¶ 14, 17.

Plaintiff alleges that, while employed by Elite Sky and Mr. Ho, he was not compensated according to the mandates of the FLSA and New York Labor Law. Specifically, he states that he worked more than 40 hours per week without being properly compensated for overtime work as required by both the FLSA and New York Labor Law and that he was not given "spread of hours pay" as required by New York Labor Law. Compl. ¶ 5. Plaintiff estimates that, from January 2009 to April 2009, he generally worked 66 hours per week over 6 days. *See* Compl. ¶ 38. Plaintiff further alleges that, from May 2009 until the end of his employment in March 2010, he typically worked 70 hours per week, working 12-13 days without time off. Compl. ¶ 39. In addition, plaintiff contends that defendants failed to post state and federal labor law requirements in the workplace and to keep records of hours worked and wages paid. Compl. ¶¶ 49-50. Accordingly, Curiel alleges that defendants violated the FLSA and the New York Minimum Wage Act, N.Y. LAB. LAW §§ 650 *et seq.*, as well as other provisions of the state Labor Law and N.Y. COMP. CODES R. & REGS. tit. 12 § 142-2.4 on spread of hours pay.[3] Compl. ¶ 7.

**DISCUSSION**

A.  *Liability*

Once a default judgment is entered, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. *See Greyhound Exhibitgroup, Inc., v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Montcalm Pub. Corp. v. Ryan*, 807 F. Supp. 975, 977 (S.D.N.Y. 1992). "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *See Labarbera v. ASTC Labs., Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (internal quotation marks omitted). *See also Au Bon Pain Corp. v. Artect,*

---

[3] This Court has supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

*Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) (recognizing the court's authority, even after default, to determine whether plaintiff has stated a cause of action).

The allegations in the complaint establish the elements required to state a claim pursuant to the FLSA. The FLSA provides that

> [e]very employer shall pay to each of his employees . . . who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, . . . [wages] not less than the minimum wage rate in effect under subsection (a)(1) of this section.

29 U.S.C. § 206(b). An enterprise is engaged in commerce where, in relevant part, it "has employees . . . handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce" and where its "annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A).

Thus, as a threshold matter, a plaintiff in an FLSA action must establish: 1) that an employer-employee relationship exists, and 2) that the employer is engaged in interstate commerce. *See* 29 U.S.C. § 206(b). To turn to the second prong first, Curiel's complaint states that he is "a former employee of Defendants, primarily employed to" transport seafood into defendants' warehouse. Compl. ¶ 4; *see also* Affidavit of Jose Eduardo Curiel ("Curiel Aff.") ¶¶ 7-8, Docket Entry 22 (and reproduced at Docket Entry 31-2). Plaintiff further contends that the "Defendants and/or their enterprise were directly engaged in interstate commerce," and notes that "numerous items that were used in the seafood wholesale business on a daily basis were produced outside of New York" and that defendants had a "gross annual volume of sales not less than $500,000." Compl. ¶¶ 30-31. These allegations, admitted by virtue of defendants' default, are sufficient to establish the threshold requirements of the FLSA.

To be held liable under the FLSA, a defendant must meet the statutory definition of an "employer." The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee". 29 U.S.C. § 203(d). *See also* N.Y. LAB. LAW § 651(6) (also defining "employer" as an entity "acting as employer"). Following the Supreme Court's mandate in *Goldberg v. Whitaker House Coop.*, 366 U.S. 28, 33 (1961) that courts look to the "economic reality" of a situation to determine who qualifies as an employer, the Second Circuit has identified the following factors as relevant: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Herman v. RSR Sec. Servs.*, 172 F.3d 132, 139 (2d Cir. 1999). This test may also be employed to determine whether an individual is an employer. *See Rodriguez v. Queens Convenience Deli Corp.*, 2011 WL 4962397, at *7 (E.D.N.Y. Oct. 18, 2011); *Pavia v. Around the Clock Grocery, Inc.*, 2005 WL 4655383, at *4 (E.D.N.Y. Nov. 15, 2005) (also noting that the "overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages" (quoting *Moon v. Kwon*, 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002)). The definition of an employer for purposes of New York Labor Law is "similarly expansive," and courts have used the same economic realities test to determine whether a person or entity qualifies as an employer under both federal and state law. *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 342, 342 n.25 (S.D.N.Y. 2005) (citing, *inter alia*, N.Y. LAB. LAW § 651(6)).

Plaintiff's allegations regarding Elite Sky International and Dominic Ho establish that both defendants were his employers. Curiel states that "[e]ach Defendant possesses or possessed

5

substantial control over the Plaintiff's . . . working conditions, and over the policies and practices with respect to the employment and compensation of the Plaintiff." Compl. ¶ 25. At least as to the hours that are the subject of this complaint, Curiel worked exclusively at Elite Sky's warehouse from 2009 to 2010. *See* Faillace Supp. Affirm. ¶¶ 13, 20. According to Curiel, Ho specifically "determined the wages and compensation of the employees of Defendants, including Plaintiff, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees."[4] Compl. ¶ 19; *see also* Faillace Supp. Affirm. ¶ 27. These allegations, undisputed due to defendants' default, establish that defendants were plaintiff's employers.

Despite the fact that Ho seems to have been plaintiff's employer, I recommend that he not be held liable for any violations of the FLSA because it appears he was not properly served with Court documents. While plaintiff served the complaint on Mr. Ho, Docket Entry 19-6, he was also ordered to serve defendants copies of Court Orders multiple times and to provide the Court with return receipts, and did not do so. *See* Docket Entries 27, 28 and 29. When again ordered to serve defendants with these orders upon pain of dismissal of the case for failure to prosecute, plaintiff appears to have served only the corporate defendant. *See* Docket Entries 32, 33. I find it is thus improper to hold Mr. Ho individually liable where he has not received proper notice of the current claim against him. *Cf. Kucher v. Alternative Treatment Ctr. of Paterson*, 2009 WL 1044626, at *3-4 (E.D.N.Y. Mar. 27, 2009), *adopted by* 2009 WL 1045989 (E.D.N.Y. Apr. 20, 2009) (recommending that an action where defendants were in default be dismissed for failure to

---

[4] Curiel's complaint mentions that Ho kept "employee records" during plaintiff's employment. Compl. ¶ 19. Plaintiff's counsel's supplemental affirmation, however, does not make any mention of this role. *See* Docket Entry 31. The complaint also states that defendants violated the FLSA by not keeping the requisite employee records. Compl. ¶¶ 45, 50. While the record-keeping issue thus remains unclear, it is not dispositive of the question of who constitutes an employer here where other factors support plaintiff's contention. *See Shim v. Millenium Grp.*, 2010 WL 409949, at *2 (E.D.N.Y. Jan. 27, 2010) (citing *Herman*, 172 F.3d at 140).

serve the amended complaint, even though the original complaint had been properly served and contained "identical causes of action" to the later version).  I therefore respectfully recommend that only Elite Sky International be held liable for any violations discussed below.

Turning to the substance of plaintiff's claims, Curiel alleges that defendants failed to pay him both minimum wage and overtime wages during particular periods.  The FLSA and New York Labor Law both provide for a statutory minimum wage.  29 U.S.C. § 206(a) (setting the minimum wage at $6.55 per hour between July 24, 2008 and July 23, 2009 and at $7.25 per hour after July 24, 2009); N.Y. LAB. LAW § 652(1) (setting the minimum wage at $7.15 on and after January 1, 2007 or at the federal minimum wage if greater).  Both statutes mandate that employees be paid one and a half times the regular rate for overtime.  29 U.S.C. § 207(a)(1) (defining overtime as any hours above forty per week); N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.2 (mandating an overtime wage calculated, in relevant part, in the same manner as that under the FLSA).  An employee demonstrating minimum wage violations under both state and federal law "may recover under the statute which provides the greatest amount of damages." *Rodriguez*, 2011 WL 4962397, at *2 (quoting *Wicaksono v. XYZ 48 Corp.*, 2011 WL 2022644, at *8 (S.D.N.Y. May 2, 2011)).

Curiel states that, for the time period relevant to this suit, he was paid $1,000 every 2 weeks.  Compl. ¶ 43.  Between January 2009 and April 2009, he generally worked 66 hours per week.  Compl. ¶ 38.  From May 2009 to approximately March 4, 2010, plaintiff alleges his schedule involved working about 70 hours per week.  Compl. ¶ 39.  Curiel alleges that his pay did not vary based on the number of hours he worked.  Compl. ¶ 44.  Plaintiff calculates, and I agree that, from May 1, 2009 to March 4, 2010, Curiel was not paid the minimum wage he was

owed.[5] *See* Faillace Affirm., Ex. C.[6] Further, I find, in accordance with plaintiff's calculations, that, during all periods relevant to this lawsuit, he was not paid for his overtime work.[7] Therefore, default judgment may be entered as to his minimum wage and overtime claims.

Curiel also invokes a provision of New York Labor Law that provides for "spread of hours" pay. The spread of hours requirement entitles an employee to an additional hour of pay for every day that employee works more than 10 hours. *See* N.Y. COMP. R. & REGS. tit. 12, § 142-2.4(a); *see also Pavia*, 2005 WL 4655383, at *2. As plaintiff states in his damages calculations, the only period during which he worked longer than 10 hours a day was from January 2009 to April 2009, when he worked approximately 11 hours per day.[8] *See* Faillace Affirm., Ex. C. Curiel states that he "never received an additional hour's pay at the minimum wage rate for days when [he] worked an excess of 10 hours." Curiel Aff. ¶ 22; *see also* Compl. ¶ 5 (same). As the defendants have not refuted this statement, I find that Curiel was denied his spread of hours pay for January to April 2009.

For the reasons stated above, I respectfully recommend that a default judgment be entered against the corporate defendant, but not the individual defendant, for non-payment of minimum wages, overtime and for spread of hours pay.

---

[5] From January to April 2009, Curiel appears to have been paid more than the minimum wage. Dividing his weekly wage, $500, by the number of hours he worked, 66, gives a rounded result of $7.58. *See* Faillace Affirm., Ex. C. This figure is higher than the federal minimum wage at the time, $6.55, and the state minimum wage, $7.15.

As plaintiff calculates, from May 2009 to July 23, 2009, the higher minimum wage was still that listed in the state statute of $7.15; however, Curiel had begun to work approximately 70 hours per week. He continued to make $500 per week and was thus paid approximately $7.14 per hour. *See id.*

Finally, from July 24, 2009 until March 4, 2010, the federal mandate of $7.25 per hour was the higher minimum wage. Still working approximately 70 hours per week for $500, plaintiff was being paid approximately $7.14 per hour. *Id.*

[6] "Faillace Affirm." refers to the affirmation of Michael Faillace in support of plaintiff's motion for default judgment, Docket Entry 23.

[7] Plaintiff states that he was never paid additional wages for working overtime. *See* Curiel Aff. ¶¶ 18, 21. Given that overtime pay is calculated as one and a half times the regular wage an employee is paid, *see* 29 U.S.C. § 207(a)(1), this assertion establishes that he was denied overtime pay.

[8] While it is difficult to discern from the information provided by the plaintiff whether he might also be entitled to spread of hours pay during other periods of employment, he has not claimed that he is owed any spread of hours pay for work performed after April 30, 2009. *See* Faillace Affirm., Ex. C.

B. *Damages*

Although the allegations of a complaint pertaining to liability are deemed admitted upon entry of a default judgment, allegations relating to damages are not. *See Greyhound Exhibitgroup*, 973 F.2d at 158. A court must ensure that there is a basis for the damages sought by a plaintiff before entering judgment in the amount demanded. *See Fustok v. ContiCommodity Services, Inc.*, 873 F.2d 38, 40 (2d Cir. 1989). A court may make this determination based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence. *See* FED. R. CIV. PROC. 55(b)(2); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991); *Fustok*, 873 F.2d at 40. Plaintiff requests unpaid minimum and overtime wages under the FLSA and New York law, spread of hours pay under New York law, liquidated damages under state and federal law, pre- and post-judgment interest, attorney's fees and costs, as well as various forms of declaratory relief. *See* Compl. at 16-18. He has attested to his recollection of his hours worked and the wages paid and provided a chart detailing his alleged damages. *See* Curiel Aff. ¶¶ 13-17; Faillace Affirm., Ex. C. Further, his attorney has submitted information about his hours and fees. *See* Faillace Affirm., Ex. B. Defendants have not submitted any opposition to plaintiff's assessment of his damages and costs. Under these circumstances, a hearing on the issue of damages is not warranted.

> For a violation of the FLSA, an employer is liable to all affected employees in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. . . . The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.

29 U.S.C. § 216(b). Similarly, New York Labor Law allows for the recovery of "the amount of any such underpayments, together with costs all reasonable attorney's fees, prejudgment interest

as required under the civil practice law and rules," and liquidated damages. N.Y. LAB. LAW § 663(1).

A "plaintiff need not compute FLSA damages with precision. The burden is on an employer properly to record hours, and an employee need only as a *prima facie* matter present an estimate of damages that is satisfactory as 'a matter of just and reasonable inference.'" *Harold Levinson Assocs., Inc. v. Chao*, 37 Fed. Appx. 19, 20-21 (2d Cir. 2002) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946)). As such, in the case of defendants' default, "the courts have held that the plaintiff's recollection and estimates of hours worked are presumed to be correct." *Perero v. Food Jungle, Inc.*, 2006 WL 2708055, at *5 (E.D.N.Y. Aug. 7, 2006) (internal quotation marks and citation omitted). Accordingly, on providing an affidavit detailing the hours he worked for defendants and the wages he received, Curiel Aff. ¶¶ 13-17, plaintiff has sufficiently established the number of hours he worked and for which he is entitled to additional wages under the FLSA and New York law.

    a. Unpaid wages

        i. *Unpaid minimum wage and unpaid overtime*

Plaintiff alleges that he worked from 9:00 a.m. to 8:00 p.m. six days a week between January 2009 and April 2009. *See* Curiel Aff. ¶ 13. As noted above, the plaintiff was paid above the minimum wage rate under both state and federal law during this period, and he does not assert a claim for unpaid minimum wage damages for this time period. Faillace Affirm., Ex. C. He was, however, not paid for the 26 overtime hours he worked per week. He should have been paid one and one half times his regular rate of approximately $7.58 for the 26 overtime hours he worked per week. Plaintiff calculates that the difference between this amount and what plaintiff was actually paid for those hours totals $98.48 per week, or $1,674.24. *See* Faillace Affirm.,

Ex. C. The Court finds this calculation to be correct and thus recommends that the plaintiff be awarded this amount in unpaid overtime wages for this period.

From May 2009 to July 23, 2009, Curiel alleges that he worked from 9:00 p.m. to 7:00 a.m. for 12 or 13 days a time, and that he averaged 70 hours of work per week during this period. Curiel Aff. ¶ 14. Plaintiff calculates that, during this time, he was paid approximately $7.14 per hour. Faillace Affim., Ex. C. This amount is $.01 less than the state minimum wage, though higher than the federal minimum wage. During the same period, defendants also did not pay plaintiff overtime wages. Plaintiff calculates the total amount of underpayment of minimum and overtime wages to be $107.75 per week and thus finds that plaintiff is owed $1,293.00 for the 12 weeks during this time. *Id.* I reach the same total as plaintiff and thus recommend that he be awarded this amount for this time period.

From July 24, 2009 to March 4, 2010, plaintiff worked the same hours for the same pay, Curiel Aff. ¶¶ 14, 17; however, the minimum wage rose during this period to $7.25 per hour. Plaintiff calculates that, at this rate, he should have been paid $116.25 a week more than he was. Faillace Affirm., Ex. C. Over 32 weeks, this amounts to $3,720.00. I again approve of plaintiff's calculations and recommend that he be awarded this amount for his work between July 24, 2009 and March 4, 2010.

Totaling the above, I find that the plaintiff is owed $6,687.24 in unpaid minimum and overtime wages.

      ii. *Spread of hours pay*

In addition, between January 2009 and April 2009, plaintiff calculates that he was entitled to a weekly amount of $42.90 of spread of hours pay for the six days per week he

11

worked more than 10 hours per day between January 2009 and April 2009.[9] Therefore, over 17 weeks, plaintiff was owed $729.30 in spread of hours pay. *See* Faillace Affirm., Ex. C. The Court concurs with plaintiff's calculations and recommends that spread of hours pay be awarded in this amount.

        b.  Liquidated damages

The FLSA and New York Labor Law both provide for the award of liquidated damages. *See* 29 U.S.C. § 216(b); N.Y. LAB. LAW § 663(1). Authority in this Circuit is mixed as to whether a plaintiff may recover these damages under both the federal and state statutes. *Li Ping Fu v. Pop Art Int'l*, 2011 WL 4552436, at *4 (S.D.N.Y. Sept. 19, 2011), *adopted as modified by* 2011 WL 6092309 (S.D.N.Y. Dec. 7, 2011) (noting that the "courts in this Circuit are split as to whether a plaintiff may recover both federal and state liquidated damages for the same overtime violation" and declining to award both). Courts that have permitted plaintiffs to be awarded both types of damages have done so because they have found that the two provisions serve different purposes. *See, e.g.*, *Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 261-62 (S.D.N.Y. 2008) (noting that liquidated damages under state law are "punitive in nature," while the federal liquidated damages serve as "compensation to the employee occasioned by the delay in receiving wages" (internal citations and quotation marks omitted)).[10] A number of other courts have found an award of liquidated damages under both statutes to be an impermissible double recovery. *See*

---

[9] The spread of hours wage provision mandates that, for any day an employee works more than 10 hours, he is entitled to "one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage" required by law. *See* N.Y. COMP. CODES R. & REGS. tit. 12 § 142-2.4. I have therefore used, as apparently did plaintiff, the state minimum wage at the time, $7.15, to calculate Curiel's spread of hours pay.

[10] More recently, however, New York's labor law has been amended to parallel the liquidated damages sections of the FLSA. *Compare* 29 U.S.C. §§ 216(b), 260 *with* N.Y. LAB. LAW § 663(1). Prior to November 23, 2009, the statute read: an employee "may recover . . . if such underpayment was willful, an additional amount of liquidated damages equal to twenty-five percent of the total of such underpayments." N.Y. LAB. LAW § 663 (1967). The current good faith language was added in 2009, and, in 2010, the amount of liquidated damages was increased to one hundred percent of unpaid wages, effective April 9, 2011. *See* § 663 (2009); § 663 (2011). The provision has been held not to operate retroactively, however. *See Wicaksono v. XYZ 48 Corp.*, 2011 WL 2022644, at *6 n.2 (S.D.N.Y. May 2, 2011) (applying New York's "liquidated damages provisions . . . as they existed at the time of the defendant's violations"). The current language of the provision thus does not apply to this plaintiff.

*Paz v. Piedra*, 2012 WL 121103, at *12 (S.D.N.Y. Jan. 12, 2012) (declining to grant liquidated damages under both statues because they "compensate . . . the exact same harm" (quoting *Yin v. Kim*, 2008 WL 906736, at *7 (E.D.N.Y. Apr. 1, 2008)); *Pineda-Herrera v. Da-Ar-Da, Inc.*, 2011 WL 2133825, at *4-5 (E.D.N.Y. May 26, 2011) (finding "no persuasive basis to distinguish the two forms of damages" and collecting cases with holdings to that effect).

I find the latter conclusion more persuasive. I thus recommend that the plaintiff not be awarded damages under both statutes for overlapping state and federal claims. He may, however, recover liquidated damages under the state statute for violations that arose purely under state law, including his claim for spread of hours pay. *See, e.g.*, *Pavia*, 2005 WL 4655383, at *7-8 (calculating damages similarly).

          i. *Liquidated damages under the FLSA*

As noted above, liquidated damages are available under the FLSA where the employer's actions were not taken in good faith. Pursuant to 29 U.S.C. § 260, courts may, in their discretion, decline to award liquidated damages where the employer "shows to the satisfaction of the court" that he acted in good faith and reasonably believed that he was conforming with the FLSA. Obviously, an employer who defaults fails to make a showing of good faith. *Rodriguez*, 2011 WL 4962397, at *4 (citing *Wicaksono*, 2011 WL 2022644, at *6). The amount of unpaid wages for the purpose of calculating liquidated damages on the minimum wage must, however, be determined based on the federal, not the state, minimum wage. *Id.* (internal citations omitted).

The process of calculating federal liquidated damages on unpaid overtime is slightly different, however. Section 207(a) mandates that employees be paid overtime at one and a half times their "regular rate." The FLSA's regulations "clarify that '[w]here a higher minimum

13

wage . . . is applicable to an employee by virtue of [state law], the regular rate of the employee, as the term is used in the [FLSA], cannot be lower than such applicable minimum . . . the words "regular rate" . . . must be construed to mean the regular rate at which he is *lawfully* employed.'" *Lanzetta v. Florio's Enterprises, Inc.*, 2011 WL 3209521, at *3 (S.D.N.Y. July 27, 2011) (quoting 29 C.F.R. § 778.5). Courts have, therefore, employed the higher state minimum wage rate when calculating liquidated damages on non-payment of overtime wages. *See id.*; *Pineda-Herrera*, 2011 WL 2133825, at *3.

From January 2009 to April 30, 2009, the only violation of the FLSA was the non-payment of overtime to Mr. Curiel. Plaintiff calculated that the overtime he should have received amounted to $1,674.24. I therefore recommend that he receive one hundred percent of this amount in liquidated damages.

From May 2009 to July 23, 2009, the plaintiff also did not have any minimum wage-related damages under the FLSA, given that he was paid approximately $7.14 per hour and the federal minimum wage at the time was $6.55. He was, however, not paid overtime as mandated by the federal statute and thus may receive one hundred percent of the overtime to which he was entitled at the prevailing state minimum wage rate. Here, plaintiff overstates the federal liquidated damages to which he is entitled by requesting one hundred percent of all unpaid wages during this period, or $1293. *See* Faillace Affirm., Ex. C. Taking instead one hundred percent of the overtime plaintiff would be owed under the state minimum wage, I find appropriate liquidated damages under the FLSA for this period to equal $1,289.57 and recommend an award in this amount.[11]

---

[11] I reached this figure as follows: I calculated the amount in overtime wages Curiel would have been entitled to at one and a half times the state minimum wage for his 30 hours of overtime per week (7.15 x 1.5 x 30). I then subtracted what Curiel was actually paid for those 30 hours—his hourly rate (500/70) times 30. Finally, I multiplied that figure by the number of weeks in this period, 12.

14

From July 24, 2009 to March 4, 2010, the plaintiff suffered FLSA violations of both unpaid minimum wages and unpaid overtime. As discussed above, Curiel was owed $3,720.00 for this time, and I thus recommend that he receive one hundred percent of that amount. Curiel's total federal liquidated damages equal $6,683.81.

ii. *Liquidated damages under the N.Y. Labor Law*

Plaintiff may also recover twenty five percent of the damages to which he is entitled under state law. As noted above, he may not receive liquidated damages under state law for violations that have already led to a liquidated damages award under the FLSA. Therefore, plaintiff may be awarded liquidated damages only for the spread of hour wage violations from January 2009 to April 2009, and the minimum wage violations from May 2009 to July 23, 2009.[12] Liquidated damages under the state law in effect at the time were calculated at a rate of twenty-five percent of the amount of unpaid wages.

At the time of the spread of hours violations, the liquidated damages provision allowed for an additional recovery of twenty five percent of unpaid wages "if such underpayment was willful." N.Y. LAB. LAW § 663 (1967); *see also supra* n.10. Willfulness appears to have been established in this case; Curiel states that he "repeatedly complained to [his] manager" about his hours and pay without redress. Curiel Aff. ¶¶ 19-20; *see also Santillan v. Henao*, --- F. Supp. 2d ----, 2011 WL 4628752, at *9 (E.D.N.Y. Sept. 30, 2011) (noting that "[w]illfulness, in this context, is found where the employer . . . knowingly, deliberately or voluntarily disregards its obligation to pay wages" (internal quotation marks and citations omitted)). As discussed above, plaintiff calculates that Curiel's spread of hours pay should have been $42.90 per week during the 17 week period from January 2009 to April 2009, or $729.30 in total. *See* Faillace Affirm.,

---

[12] Plaintiff appears to request federal liquidated damages, rather than those available under state law, for minimum wage violations during this period. *See* Faillace Affirm., Ex. C. As explained above, an award under state law is appropriate.

15

Ex. C. A quarter of this pay is approximately $182.33, as plaintiff notes, and I recommend that the plaintiff receive this amount in liquidated damages.

From May 2009 to July 23, 2009, when the plaintiff was not paid the state minimum wage, he was underpaid by about $3.43.[13] One quarter of this amount is approximately $.86, and I recommend that he also be compensated in that amount. Curiel's total state liquidated damages are $183.19.

      c. Pre-judgment interest

Plaintiff requests pre-judgment interest on any damages awarded for the New York law claims in the complaint. Pre-judgment interest "may not be awarded in addition to liquidated damage for violations of the FLSA" because "liquidated damages awarded under the FLSA for unpaid overtime [are] designed to compensate employees for delay in payment," just as pre-judgment interest is intended to do. *Santillan*, 2011 WL 4628752, at *9 (citing *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1064 (2d Cir. 1988)). Under New York law, however, prejudgment interest may be awarded even where liquidated damages have been assessed. *See Jin v. Pacific Buffet House*, 2009 WL 2601995, at *9 (E.D.N.Y. Aug. 24, 2009) (citing *Reilly v. Natwest Markets Grp., Inc.*, 181 F.3d 253, 265 (2d Cir. 1999) (declining to award liquidated damages under both the federal and state statutes but calculating prejudgment interest for unpaid wages and spread of hours owed under the state statute). Therefore, Curiel may recover prejudgment interest on the violations for which he received liquidated damages under state law, or a total of $732.73 ($729.30 in outstanding spread of hours pay + $3.43 in unpaid minimum wages).

---

[13] As discussed above, the state minimum wage at the time was $7.15 per hour. Subtracting Curiel's normal rate ($500/70 hours worked per week) times a 40 hour work week from what he should have been paid per week yields an underpayment of approximately $.29 per week. Multiplying the unrounded figure by the 12 weeks in this time period results in a total underpayment of approximately $3.43 in minimum wages.

16

The prejudgment interest rate is set at 9% per annum under New York law. N.Y. C.P.L.R. § 5004. Where a number of violations are at issue, courts may set the point at which interest begins to accrue at "a single reasonable intermediate date." N.Y. C.P.L.R. ¶ 5001(b); *see also Reilly*, 181 F.3d at 265. The median date of the period during which Curiel incurred these damages is approximately April 9, 2009. I therefore recommend that interest be calculated from April 9, 2009 to the date of judgment on the amount of $732.73, to be calculated by the Clerk of Court at the time of judgment.

    d. Attorney's fees and costs

Both the FLSA and New York state law provide for an award of reasonable attorney's fees and costs. 29 U.S.C. § 216(b); N.Y. Lab. Law § 198(4). The Second Circuit has clarified that, generally, in determining an award of attorney's fees, a court should calculate a "presumptively reasonable fee" by taking the product of the hours reasonably expended and a reasonable hourly rate that reflects what "a paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Assoc. v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008) (internal quotations omitted). In doing so, the Court has "considerable discretion." *Id.* In addition, claims for attorney's fees in the Second Circuit must comply with *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983), which requires that contemporaneous time records be submitted with all fee applications.

Counsel in this case requests $8,070 in attorney's fees and $550 in costs. Faillace Affirm., Ex. B. From the time records provided, Mr. Faillace appears to bill at the rate of $450 per hour and his associate, Yolanda Rivero, at the rate of $300 per hour. *Id.* Mr. Faillace is the managing partner of Michael Faillace & Associates and has been practicing since 1983. Faillace Affirm. ¶ 26i(i). He has taught employment law and is "a nationally-renowned speaker and

writer on employment law." *Id.* Ms. Rivero has practiced since 1998 and focused on FLSA cases since 2006. *Id.* ¶ 26i(ii).

I find the attorney's fees requested in this case to be unreasonable. The rates sought by counsel are higher than the rates usually awarded in this district to attorneys practicing in this field. *See, e.g.*, *Santillan*, 2011 WL 4628752, at *12 (collecting cases and finding in a default FLSA action that $375 per hour was an appropriate rate for a partner's work and $250 per hour was reasonable for an associate). Further, a number of the hours expended seem excessive. To cite one example, Mr. Faillace billed 1.7 hours for filing the complaint, a task that could have been accomplished by a paralegal and that, at over an hour and a half, suggests that travel time was improperly included. *See Top Banana, L.L.C. v. Dom's Wholesale & Retail Ctr., Inc.*, 2008 WL 4925020, at *2 (S.D.N.Y. Nov. 10, 2008) (recognizing that the "magistrate judge properly reduced the presumptive fee award amount . . . to take into account attorney hours billed for the performance of paralegal-type work"); *Barfield*, 537 F.3d at 139 (noting that travel time is generally "compensated at half-rate, in accordance with established court custom").

Taking these factors into account, I respectfully recommend that his proposed fees be reduced by twenty-five percent. *See Carey*, 711 F.2d at 1146 (recognizing that the judge "was acting within his discretion when he chose to make percentage reductions in response to defendants' detailed claims that fee application contained excessive . . . hours"); *Vazquez v. Ranieri Cheese Corp.*, 2011 WL 554695, at *3 (E.D.N.Y. Feb. 7, 2011) (noting that the "Court has the discretion to reduce an unreasonable fee by a fixed percentage rather than attempt line-by-line reductions" (citing cases)). Therefore, I recommend that attorney's fees be awarded in the amount of $6,052.50, rather than the $8,070 suggested by plaintiff's counsel.

Counsel's costs also appear unreasonable. He assesses costs for the work of five process servers at $40 each, apparently for service on former defendants NK Seafood Group, Chen Ting Yee, and NK Seafood, Inc., as well as remaining defendants Elite Sky and Dominic Ho. *See* Docket Entries 19-3 – 19-7, 24.[14] I do not recommend awarding costs for service on three of these defendants, as plaintiff has decided not to pursue entry of a default judgment against them. *See* Faillace Supp. Affirm. ¶¶ 21-22. I instead recommend an award of $80 in service costs and $350 in filing fees, for a total of $430. I thus calculate reasonable costs and fees to total $6,482.50.

## CONCLUSION

For the reasons stated above, I respectfully recommend that Elite Sky International alone be held liable for the following amounts:

| | |
|---|---|
| Unpaid minimum and overtime wages: | $6,687.24 |
| Spread of hours pay: | $729.30 |
| Federal liquidated damages: | $6,683.81 |
| State liquidated damages: | $183.19 |
| Attorney's fees and costs: | $6,482.50 |
| Total: | $20,766.04 |

I further recommend that the plaintiff also receive pre-judgment interest of 9% per annum on the amount of $732.73 beginning on April 9, 2009, to be calculated by the Clerk of Court on the date of judgment, and post-judgment interest on the entire amount of damages to also be calculated by the Clerk of Court pursuant to 28 U.S.C. § 1961. Finally, I recommend dismissal of claims against defendants NK Seafood Group, Chen Ting Yee, Dominic Ho, and NK Seafood, Inc., former defendant Larry Yu already having been voluntarily dismissed by plaintiff. *See* Docket Entry 25.

---

[14] Attached to his affidavit in support of entry of default against these five defendants, Docket Entry 19, counsel provided proof of service. Due to a problem with the documentation of service on Chen Ting Yee, a correct proof of service was filed at Docket Entry 24.

Any objections to the recommendations made in this Report must be made within fourteen days after service of the Report and, in any event, no later than March 14, 2012. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2). Failure to file timely objections may waive the right to appeal the District Court's order. *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (discussing waiver under the former ten day limit).

/s/
Steven M. Gold
United States Magistrate Judge

Brooklyn, New York
February 23, 2012

*U:\rmk 2011-12\Curiel v Elite Sky Int'l\Curiel v Elite Sky Int'l- R&R final.docx*